## SAMUEL DOYLE v. ANGELO DOBSON.

*Evidence—Written contract—Charge to jury.*

1. Where a father made an *oral* agreement with his son-in-law for his support, and afterwards his son made a written contract with the son-in-law for such support, in the absence of his father, which contract the father claims not to have authorized, and that it was not in accordance with the terms of the oral agreement, the father may show what the agreement was as he made it, and that it has not been fulfilled by the son-in-law,

---

in a suit with a third person involving the validity of the written contract and its binding effect upon the father.

2. Evidence of conversations between two adverse claimants of personal property, having a legitimate bearing upon the *title*, is held admissible in this case, though had in the absence of the defendant, who claims as vendee of one of such claimants.

3. An instruction that the jury are not to be influenced by sympathy for either party in disposing of the case, when asked for, ought to be given in most cases.

Error to Branch. (Lane, J., presiding.) Argued April 4, 1889. Decided April 19, 1889.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion.

*F. A. Lyon* and *W. H. Lockerby,* for appellant.

*Dudley M. Wells (Henry C. Loveridge,* of counsel), for plaintiff.

MORSE, J. This is an action of replevin brought in the circuit court for the county of Branch for a yoke of cattle. Judgment passed for the plaintiff, and the defendant brings error.

For some time prior to January, 1888, the plaintiff and his son, Amos Doyle, had been living together. The yoke of cattle in question was purchased with money obtained from a mortgage executed by both of them upon land, 20 acres belonging to plaintiff and 17 to Amos.

About January 9, 1888, one La Forest Smith, a son-in-law of plaintiff, made an arrangement under which the plaintiff was to live with him, and be supported until he died. It is claimed by the plaintiff that Smith was to properly maintain him during his life, pay his funeral expenses, his physician bills, and a note against him. Smith was to give security for the performance of this agreement, and in return was to have the oxen and other property.

On January 14, 1888, Amos Doyle entered into a written agreement with Smith, by which he assigned and set over to Smith his interest in the oxen; and also—

"One wagon, one plow, one cultivator, together with corn, corn-stalks, and hay now in his possession; two pigs; $100 to be paid from the Shearer account, and the straw from the four acres of wheat now growing upon the farm, as hereinafter described."

He also, in the same agreement, rented to Smith the farm, described as 40 acres, excepting the 4 acres. of wheat growing thereon, for the season of 1888. Smith, in consideration of said property, agreed that he would care for said Samuel Doyle, the plaintiff, during his natural life, "giving him such care and attention as said second party [Smith] would to any other member of his own family," and that he would pay all expenses connected with the last sickness of said Samuel Doyle, and burial expenses. He also released Amos from all obligation to care for plaintiff. Plaintiff claims that he owned the oxen; that they belonged to him and not to Amos; that he knew nothing of this written agreement, and never authorized Amos to make it, and never consented to it, or ratified it in any way. The oxen were delivered to Smith, and the plaintiff was taken to Smith's house to live. While he was living there Smith sold the cattle to defendant for $110. Plaintiff claims that he knew nothing of the sale until defendant came to get the cattle; that Smith then asked plaintiff if he was willing he should sell the oxen, and he told him he was not. Plaintiff also testifies that defendant asked him to whom the cattle belonged, and he informed him that they were his. Plaintiff understood that Smith was to give a bond conditioned for his maintenance. Smith gave no bond, and on February 18, 1888, took the plaintiff to the house of one Austin House, and there left him. In March, 1888, the plaintiff commenced this suit.

The defendant claimed—

1. That the cattle belonged to Amos, and that the plaintiff never had any property in them.

2. That under the agreement between Amos and Smith the oxen belonged to Smith, who had the right to sell them to defendant.

3. That, even if the cattle belonged to plaintiff, the defendant was entitled to them, because the plaintiff consented that Smith might sell them.

These questions of fact were submitted to the jury in a clear and fair charge by the court, and they found in favor of the plaintiff as to all of them.

There are 33 assignments of error, 13 of which relate to the admission of testimony. The court permitted testimony to be given of the talk between the parties as to the arrangement, prior to the execution of the contract between Amos Doyle and Smith. This was objected to as incompetent, on the ground that the oral talk was merged in the written agreement. The testimony was properly admitted. Plaintiff was not present when the written contract was made, and denied authorizing it. He also claimed that it was not in accordance with the agreement made orally when he was present, and to which he assented. He therefore had the right to show what the agreement was as he made it, and that it had not been fulfilled by Smith.

Many objections were made to the giving in evidence of the conversations and acts of the plaintiff, Smith, and Amos Doyle, prior to the sale of the cattle to defendant; but, as the evidence had a legitimate bearing upon the title to the cattle, it was admissible, although the defendant was not present. We find no error in the admission of testimony.

The substance of all the requests to charge presented by the defendant were given, except the fourth and seventh. The fourth is as follows:

"If Dobson purchased the cattle in good faith of Smith, he would be protected, notwithstanding Smith might have failed to fulfill his contract with Doyle. When an innocent purchaser obtains goods from one who obtains them by fraud from the owner, he will be protected in an action of replevin brought by the owner."

The seventh reads:

"In arriving at your verdict, you are not to be influenced in the least by any sympathy you may have for the plaintiff."

The court instructed the jury that the plaintiff, in order to recover, must show that he and not Amos was the owner of the cattle when they were turned over to Smith; that if the plaintiff authorized, consented to, or afterwards ratified the written contract between Amos and Smith he could not recover, or, if Amos was given general authority to act for plaintiff in the making of this contract, the plaintiff would be bound by it; also that, if plaintiff informed defendant at the time he bought the cattle that he had no claim upon them, their verdict must be for defendant. The testimony of the plaintiff was that he told Dobson the cattle were his, and objected to their being sold. The defendant's evidence was to the effect that he asked the plaintiff if there was any claim against the cattle, and if he had any objection to their being sold, and the old gentleman replied that there was no claim against them, and if he had any objection to their being sold he could not protect himself, or something of that kind. It will be seen, therefore, that, if one was believed, the defendant knew that plaintiff claimed to own the cattle, and objected to the sale, and, if the jury gave credence to the testimony of Smith and the defendant, the plaintiff made no objection to the sale. This issue being thus squarely made in the testimony, and, under the charge of the court as above stated, fairly

submitted to the jury, the fourth request was not necessary nor applicable.

In his instructions the court made no reference to the subject-matter of the seventh request in any way. It is contended ·by the counsel for defendant that this request should have been given; that the plaintiff was an old man, over 70 years of age, bent with the weight of years; and testifying, as he did, that the property taken by Smith was all he had, the jury were unduly influenced in his behalf, and should have been cautioned against giving undue weight to the natural sympathy arising from the old gentleman's age and poverty.

There may be circumstances surrounding a case in court which renders it eminently proper for the court to remind the jury of their sworn duty under their oaths to discard all sympathy or prejudice from their minds in disposing of the issues of fact in the case. But it is seldom necessary to do so, except in cases where there is more or less of public excitement in and about the court-room. It must, we think, ordinarily be considered that juries are composed of honest and intelligent men, who are seeking only to determine where the truth is, and to declare it. It is certainly something of a reproach to the men composing a jury when it becomes necessary to caution and instruct them not to let their sympathy or prejudice get the better of their judgment, so far as to lead them to disregard their oaths. Still, if such an instruction is asked, it ought to be given in most cases, as such an instruction ought not to do any harm or be of undue advantage to either party. A careful examination, however, of the record in this case, convinces us that the verdict was a just one, and not brought about by any undue sympathy or prejudice in favor of the plaintiff. We shall, therefore, not disturb it, because of the

failure of the court to give or to refer to the subject-matter of this seventh request.

There being found no error in the proceedings, the judgment will be affirmed, with costs.

The other Justices concurred.